Filed 5/20/22  In re Michael R. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MICHAEL R., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,  Plaintiff and Respondent,  v.  MIGUEL R. et al.,  Defendants and Appellants. | G060829  (Super. Ct. No. 20DP0088)  O P I N I O N |

Appeals from an order of the Superior Court of Orange County, Robert Gerard, Judge.  Conditionally affirmed.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant Miguel R.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant C.B.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

**INTRODUCTION**

We have been seeing a distinct pattern in recent juvenile dependency appeals. Pursuant to the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq., and its implementing provisions under California law, our trial courts and social services agencies are responsible for conducting appropriate inquiries and giving notice, if required, to Native American tribes of the potential involvement of tribal members in child custody proceedings. This responsibility falls on our state judicial and administrative systems precisely because we have an unfortunate national history of failing to "recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." (25 U.S.C. § 1901, subd. (5).) Thus, the inquiry and notice requirements of ICWA and related state law are not a ministerial exercise. They are an essential safeguard of rights.

Of late, however, this important ball seems to be overlooked – apparently through inadvertence – in a growing number of cases. Agencies are too often neglecting necessary inquiries or inadequately documenting the inquiries they do make. And juvenile courts are too often rubber-stamping inadequate inquiries, forcing appellate courts like us to remand their orders on appeal. We remand as we must, but in this circumstance, little comfort can be taken in doing what we believe to be our duty under the law. Any type of remand in an otherwise proper proceeding to terminate parental rights causes damaging delays in permanency planning for vulnerable children. We realize these inquiries are usually futile enterprises, but that is not always the case, and even if it is rare to come up with something, the law requires it.

2

So we find ourselves again in such an unenviable position here. Appellant mother and father argue the agency and juvenile court failed to comply with inquiry and notice requirements in their very young child's case, and they seek a reversal of the termination of their parental rights. We were not asked to review the merits of the latter decision. But inquiry and notice requirements under ICWA were not followed and we do not have the information that would be necessary to conclude the error was harmless. We therefore conditionally affirm the order, remand for a proper inquiry. and hope to see fewer and fewer such appeals.

**FACTS**

Michael R., now two years old, was born to appellant C.B. in January 2020. At the time C.B. was admitted to the hospital for Michael's birth, she tested positive for methadone. She told hospital staff she had been using methadone since mid-October 2019 to treat heroin addiction. However, she was still testing positive for heroin until nearly the end of November 2019. Michael displayed symptoms of withdrawal upon his birth and was administered morphine.

On January 16, 2020, the Orange County Social Services Agency (SSA) filed for protective custody of Michael. The application for protective custody warrant stated C.B. was cagey about her methadone treatment and would not say why she was receiving it. She acknowledged she had a history of heroin use prior to pregnancy, but refused to confirm whether she was in a methadone program for that reason. Both C.B. and Michael's father, Miguel R., had unresolved substance abuse issues and Miguel had a long history of drug and alcohol-related offenses. C.B. and Miguel were also declining standard newborn immunizations and vitamins for Michael, and C.B. was not visiting Michael while he was in the neonatal intensive care unit after birth. The juvenile court issued a protective custody warrant on January 16, 2020, and Michael was placed on a hospital hold.

3

The court took jurisdiction of Michael on June 1, 2020. Then commenced a largely fruitless period of reunification services, which the court terminated on April 20, 2021, while leaving SSA with discretion to fund existing services through the date of the August 17, 2021 permanency planning hearing under Welfare & Institutions Code section 366.26 – what is known as a "soft .26 hearing".[1] On November 1, 2021, C.B.'s and Miguel's parental rights to Michael were terminated and the child was placed for adoption.

## DISCUSSION

C.B. and Michael ask us to reverse the termination of their parental rights because they contend the trial court and SSA failed to comply with initial inquiry requirements under ICWA. Our review of the record corroborates their claims.

**I.          Duty of Inquiry**

Both the juvenile court and SSA "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian[2] child." (Welf. & Inst. Code, § 224.2, subd. (a).)[3] Under California Rules of Court, rule 5.481, such an initial inquiry requires SSA to ask parents, "extended family members," other parties with an interest, or a party reporting child abuse or neglect "whether the child is or may be an Indian child[.]" (*Id.*, subd. (a)(1).) An extended family member is defined according to "the law or custom of the Indian child's tribe or, in the absence of such law or custom, . . . a person who has reached the age of eighteen and who is the Indian child's

___

[1]     We denied Miguel and C.B.'s previous petition for writ of mandate challenging the termination of services and setting of the soft .26 hearing in an opinion issued on August 6, 2021.

[2]     We are not unaware of the problematic nature of this term; we use it for clarity because the statutes, written long ago, use it.

[3]     All statutory references are to the Welfare & Institutions Code.

grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903, subd. (2); cited in Cal. Rules of Court, rule 5.481, subd. (a)(4).) Upon such initial questioning, SSA must attach the Indian Child Inquiry Attachment (Cal. Judicial Council Form ICWA-010(A)) to any dependency petition. (Cal. Rules of Court, rule 5.481, subd. (a)(1).)

The first time the parents appear at a dependency hearing, the court must ask them whether they either know or have reason to know their child is an Indian child, and instruct them to advise the court should they receive subsequent information indicating as much. (Cal. Rules of Court, rule 5.481, subd. (a)(2).) The court must also order the parents to fill out California Judicial Council form ICWA-020, the parental notification of Indian status form. (*Id.* at subd. (a)(2)(C).)

There are six circumstances under which the court and social services agency has "reason to know" a child is an Indian child. (§ 224.2, subd. (d).) These circumstances include the court being informed that the child is an Indian child or that someone has "discovered information indicating that the child is an Indian child." (*Id.*, subd. (d)(1) & (3).) But if the court or agency "has reason to *believe* that an Indian child is involved . . . but does not have sufficient information to determine that there is reason to *know* that the child is an Indian child," both the court and the agency must "make further inquiry regarding the possible Indian status of the child . . . as soon as practicable." (*Id.*, subd. (e), italics added.)

There is reason to believe a child is an Indian child if the court or agency "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," and such information would include any information indicating, but not establishing, one of the reason to know circumstances. (§ 224.2, subd. (e)(1).) The existence of such reason to believe information triggers the court and agency's duties of further inquiry. (*Id.*, subd. (e).) A proper further inquiry includes interviewing the parents and "extended family members"

5

in order to determine information about the child and his or her parents, grandparents, and great-grandparents.  (§ 224.2, subd. (e)(2)(A); § 224.3, subd. (a)(5); Cal. Rules of Court, rule 5.481, subd. (a)(4).)  It also includes contacting the Bureau of Indian Affairs and the California Department of Social Services in order to identify name and contact information for tribes for which the child may be eligible for membership.  (§ 224.2, subd. (e)(2)(B); Cal. Rules of Court, rule 5.481, subd. (a)(4).)  And, of course, the tribes involved must be contacted through, "at a minimum," phone, facsimile, or e-mail to share information the tribe would need to make a membership determination.  (§ 224.2, subd. (e)(2)(C); Cal. Rules of Court, rule 5.481, subd. (a)(4).)

If the juvenile court finds "that proper and adequate further inquiry and due diligence as required" by section 224.2 "have been conducted and there is no reason to know whether the child is an Indian child," the court may find ICWA does not apply.  (§ 224.2, subd. (i)(2).)

**II.        Inquiry Made in Michael's Case**

When SSA filed its dependency petition for Michael on January 21, 2020, it attached the required form ICWA-010 indicating an initial inquiry had been made.  The form did not state the results of the inquiry.  But SSA's detention report, filed on January 21, 2020, showed it had asked C.B. and Miguel about Native American ancestry.  C.B. had reported she had Cherokee heritage, but was not a member of the tribe, and Miguel claimed Native American ancestry but could provide no other information on it.  It was not clear from the report what other inquiries had been made as of then.

At the initial detention hearing on January 22, 2020, both mother and father filled out and submitted the required California Judicial Council form ICWA-020, the parental notification of Indian status.  C.B. again reported her Native American heritage and told the judge she was Cherokee on her mother's side.  Miguel reported he might have Indian ancestry but told the court his mother, Felipa A., was more knowledgeable than he on the subject.  The court ordered SSA to continue to investigate in order to

6

determine if ICWA applied. It also ordered C.B. and Miguel to provide to social workers any contact information for knowledgeable relatives.

SSA social workers began to contact C.B.'s and Miguel's identified relatives to see what more information they could provide. C.B.'s mother, Linda, told the social worker there was no Native American lineage in C.B.'s family. C.B. could not provide any information on other relatives.

Miguel gave SSA contact information for Felipa but asked social workers not to contact her; presumably, he wished to try to speak to her himself. But when SSA did not hear anything for over a week, it attempted to contact Felipa directly. The contact number on file for her was incorrect, and so the social worker was never able to speak to her prior to the jurisdictional hearing. And the agency could not obtain any further information from Miguel about his Native American ancestry. Therefore, in the jurisdiction/disposition report filed February 24, 2020, SSA stated its belief that it had exhausted all potential family leads.

On February 14, 2020, SSA sent notice via certified mail to the United States Secretary of the Interior, the Sacramento area director for the Bureau of Indian Affairs (BIA), the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetowah Band of Cherokee Indians in Oklahoma. Return receipts from the tribes were filed with the court.

On March 12, 2020, the court acknowledged receiving the ICWA documentation and found the BIA had been given adequate notice of the jurisdictional hearing. The children were declared dependents on June 1, 2020, and a review hearing was set for August 31, 2020.

On August 27, 2020, SSA filed its interim review report and asked the court to make ICWA findings even though the tribes had not yet responded to the notice.[4] The court obliged at the August 31 review hearing, finding ICWA did not apply.[5]

### III.     Analysis

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.) And substantial evidence does not support the finding made by the court here.

As we have very recently stated, courts and agencies are duty-bound to inquire into a child's potential Native American ancestry to ensure protection of tribal interests. (See *In re A.R.* (2022) 77 Cal.App.5th 197, 240.) And absent such inquiry, "tribes effectively have no mechanism for ascertaining whether they have an interest in the care and well-being of any specific child." (*Ibid*.) Here, SSA failed to fulfill its duty of initial and further inquiry. Aside from asking C.B. and Miguel whether they had Native American ancestry, and following up with C.B.'s mother, Linda, one time, SSA provided no evidence it had contacted or adequately attempted to contact all "extended family members" to gather information about potential Indian child status.

And there was reason to believe Michael might have Native American ancestry. Miguel reported he had Native American ancestry and Felipa would have more information on the matter. But SSA failed to ask her, even though a social worker was eventually able to interview her in May 2020. Worse still, at the end of her interview,

---

[4]     The record reflects SSA *did* receive a response from the Eastern Band of Cherokee Indians on March 13, 2020, stating Michael was "neither registered nor eligible to register as a member" of the tribe.

[5]     There was no court reporter present for this hearing and so we have no transcript of what was said.

Felipa asked not to be contacted by social workers again. So a crucial opportunity to discover more information about Michael's potential Native American heritage was lost.

SSA also failed to question any of Miguel's other relatives on the topic, including the paternal aunts, Jessica and Christina, with whom social workers spoke on more than one occasion.

SSA asks us to infer that Felipa had nothing relevant to add because Miguel said he would speak to her and later said he had no further information on the issue. SSA contends this inference is bolstered by his counsel's signing onto the August 31, 2020 stipulation, stating in part that ICWA did not apply.

But this is less an inference than a postulation. Miguel gave SSA Felipa's contact information on January 22, 2020, and requested they not contact her. The social worker spoke to him again on January 31, 2020, and he said he had not yet spoken to his mother. The next time SSA spoke to Miguel was on February 5 and he "was unable to provide further information." After that, SSA did not talk to him again about his ancestry. There is simply no evidence that Miguel spoke to Felipa about this topic.

SSA then takes its speculation one step further. Assuming Felipa had no relevant knowledge, it concludes any failure to question Jessica and Christina was harmless – the theory being: if Felipa had no information, why should Jessica and Christina? But this argument rings hollow, as we do not know what information Felipa had.

Because we conclude the court and SSA failed to conduct adequate inquiry under section 224.2 and California Rule of Court, rule 5.481, we conditionally affirm the order terminating C.B.'s and Miguel's parental rights, but remand for the purpose of conducting the proper ICWA inquiry as soon as practicable.

## DISPOSITION

The order terminating parental rights is conditionally affirmed. The matter is remanded to the juvenile court for compliance with the inquiry, and if necessary, notice

9

provisions of ICWA and related California law.  If there is no Indian ancestry, our affirmance resolves the case.



                            BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


GOETHALS, J.